IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LATANYA THOMAS, LATANYA THOMAS, PERSONAL REPRESENTATIVE OF THE ESTATE OF TYLER THOMAS, | ) ) ) ) | CASE NO. 8:12-cv-00412 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) ) | |
| STATE OF NEBRASKA, PERU STATE COLLEGE, THE CITY OF AUBURN, THE CITY OF PERU, NEMAHA COUNTY, NEBRASKA STATE COLLEGE BOARD MEMBERS, BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES, NEBRASKA BOARD OF REGENTS, UNIVERSITY OF NEBRASKA, JOSHUA KEADLE, JOHN DOES, 1-10, | ) ) ) ) ) ) ) ) ) ) ) | **BRIEF IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT BY DEFENDANT CITY OF AUBURN** |
| | ) | |
| Defendants. | ) ) | |

Defendant, the City of Auburn, submits the following brief in support of its Motion to Dismiss Plaintiffs' First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) and NECivR 7.1, or, in the alternative, Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and NECivR 56.1.  As explained below, Plaintiffs, Latanya Thomas and Latanya Thomas, Personal Representative of the Estate of Tyler Thomas, have failed to state a claim upon which relief can be granted against the City of Auburn, therefore entitling the City of Auburn to dismissal from this action.  In the alternative, in the event this Court determines that Plaintiffs have met their threshold burden of stating a claim for relief, there are no genuine issues of material fact and the

undisputed evidence shows that Plaintiffs will be unable to recover on any of their claims against the City of Auburn, entitling the City of Auburn to judgment as a matter of law.

## PLAINTIFFS' ALLEGATIONS

According to Plaintiffs' First Amended Complaint, this is an action "for damages for assault and battery, race and sex discrimination and damages under 42 USC § 1981, 1983 for violation of the Plaintiffs Federal Civil Rights based upon sex and race by the Defendants whose actions were taken under color of state law pursuant to Neb. Rev. Stat. § 25-219."  (Doc. #6, First Amended Complaint, p. 2)  Plaintiffs also indicate in their First Amended Complaint that they are seeking relief under Neb. Rev. Stat. § 30-809, which is Nebraska's wrongful death statute.  (*Id.*, p. 1)  However, Plaintiffs have failed to state a claim upon which relief can be granted against the City of Auburn under any of these statutes.

In the "Case Summary" section of their First Amended Complaint, Plaintiffs claim that Defendant Joshua Keadle (hereinafter "Keadle") abducted and killed Tyler Thomas (hereinafter "the Decedent") on December 3, 2010, while both were students attending Peru State College, and that the abduction and assault of the Decedent occurred "on the premises of Peru State College, in the City of Auburn, the City of Peru and in Nemaha County, Nebraska."  (*Id.*, ¶¶1, 9, 12-13)  Plaintiffs contend, "Defendants and all employees were aware of the criminal activities and the criminal propensity of Keadle prior to the attack on [the Decedent] but failed to take appropriate steps to prevent the attack by Keadle on [the Decedent] as a result of the race of both Keadle and [the Decedent]."  (*Id.*, ¶7)  They continue, "All defendants, which include . . . The City of Auburn . . . through their employees and agents had information and evidence that Keadle's attack and the killing of [the Decedent] was foreseeable based upon his conduct while a student, his propensities for criminal behavior and his troubled background."  (*Id.*, ¶8)

For their first "cause of action," Plaintiffs contend that the Decedent "was a student enrolled at the Peru State College in Auburn, Nemaha County Nebraska at all times material hereto" and that the "sole and proximate cause of the death of [the Decedent], the injuries and damages suffered by the Plaintiffs and the incident heretofore described was due to the negligence of the Defendants," and then list conclusory and vague allegations of negligence against Defendants.  (*Id.*, ¶¶14-29)  The allegations of negligence against Defendants include "failing to protect all of the constitutional rights of [the Decedent], which include but are not Limited to, a violation of 42 U.S.C. § § 1981, 1983 by failing to protect [the Decedent] based upon her race and sex and allowing Keadle to kill and abduct [the Decedent] by allowing Keadle to enroll in Peru State College and renting a Dormitory room to him when a background check would have excluded Keadle from the University."  (*Id.*, ¶17)  They continue that "based upon the white race of Keadle he was granted privileges and immunities which included a substandard investigation into his criminal past and a failure by the defendants to terminate his enrollment at the college based upon his race."  (*Id.*)

In further support of their first "cause of action," Plaintiffs make more vague and conclusory allegations, including that Defendants failed to exercise reasonable care to protect the Decedent from Keadle, when it was foreseeable that she could be physically attacked by Keadle, and failing to implement "adequate safety measures for the protection of [the Decedent] and others from careless or criminal conduct on the campus and the surrounding areas in the City and the County."  (*Id.*, ¶¶18-29)  They contend that "Defendants owed a duty to [the Decedent] to take reasonable steps to protect [the Decedent], against acts of violence on its campus and violence based on any harm which resulted from her attendance at Peru State College."  (*Id.*, ¶27)

In their second and third "causes of action," Plaintiffs allege that Defendants' negligence caused the Decedent's death, and that they have been deprived of "services reasonably expected to have been rendered by the [D]ecedent" and the "services, care, comfort, companionship, and maintenance of [the Decedent]." (*Id.*, ¶¶30-37)  In their fourth "cause of action," they allege that, by reason of Defendants' negligence, they have been compelled to pay for student loans acquired by the Decedent in the amount of $1,640.00. (*Id.*, ¶¶38-41)  In their fifth "cause of action," they allege they "suffer and continue to suffer severe emotional distress, severe mental anguish and physical pain and suffering as a result of the death of [the Decedent]." (*Id.*, ¶¶42-45)  Finally, in their sixth "cause of action," they allege that, as a result of Defendants' alleged negligence, the Decedent "suffered from severe mental anguish and physical pain and suffering" prior to her death. (*Id.*, ¶¶46-49)

For the reasons set forth below, these allegations fail to state a claim upon which relief can be granted against the City of Auburn.  Therefore, pursuant to Fed. R. Civ. P. 12(b)(6), the City of Auburn is entitled to dismissal of all claims against it and dismissal from this action. Moreover, even if Plaintiffs could state a claim for relief against the City of Auburn, the pleadings and undisputed evidence show that there are no genuine issues of material fact and that the City of Auburn is entitled to summary judgment under Fed. R. Civ. P. 56.

## STATEMENT OF MATERIAL FACTS

1.      Plaintiffs in this action are Latanya Thomas, individually, and Latanya Thomas, alleged Personal Representative of the Estate of Tyler Thomas.  (Doc. #6, First Amended Complaint)

2.      The City of Auburn is one of multiple Defendants in this action.  (Doc. #6, First Amended Complaint)

3.      Peru State College is not located in the City of Auburn, Nebraska.  (Lottman Affidavit, ¶3; Heskett Affidavit, ¶3)

4.      The City of Auburn Police Department has maintained electronic records since at least January 2003.  (Lottman Affidavit, ¶6)

5.      On January 1, 2013, the City of Auburn Police Department was disbanded.  Since that time, the City of Auburn has contracted with the Nemaha County Sheriff's Office to provide law enforcement services within the City of Auburn.  (Lottman Affidavit, ¶5)

6.      When the City of Auburn Police Department disbanded, all of its records were transferred to the Nemaha County Sheriff's Department, which maintains custody and control over such records.  (Lottman Affidavit, ¶6)

7.      Mr. Brent Lottman is the Sheriff of Nemaha County, Nebraska, and has served in this capacity since January 2003.  (Lottman Affidavit, ¶4)

8.      Sheriff Lottman performed an electronic search of the City of Auburn Police Department records, for records mentioning Keadle.  Sheriff Lottman found no records containing any reference to or mention of Keadle. (Lottman Affidavit, ¶7)

9.      Sheriff Lottman performed an electronic search of the City of Auburn Police Department records for records mentioning or referencing the Decedent.  Sheriff Lottman found no records containing any reference to or mention of the Decedent. (Lottman Affidavit, ¶8)

10.     There is no evidence of any relationship or contact between the City of Auburn Police Department and either Keadle or the Decedent.  (Lottman Affidavit, ¶9)

11.     There is no evidence of a custodial relationship between the City of Auburn Police Department and either Keadle or the Decedent.  (Lottman Affidavit, ¶10)

12.     Ms. Sherry Heskett is the City Clerk for the City of Auburn, and has served in this capacity since 1982.  (Heskett Affidavit, ¶2)

13.     In Ms. Heskett's position as City Clerk for the City of Auburn, she receives and fields written complaints made to the Office of the City Clerk, and is responsible for forwarding complaints received by the Office of the City Clerk to appropriate City Officials and/or Departments.  (Heskett Affidavit, ¶4)

14.     In her capacity as City Clerk for the City of Auburn, Ms. Heskett forwarded all complaints that she considered law enforcement matters to the Auburn Police Department until it was disbanded on January 1, 2013.  Since January 1, 2013, she has forwarded complaints of this nature to the Nemaha County Sheriff.  (Heskett Affidavit, ¶5)

15.     Ms. Heskett does not recall receiving any written complaints made to the City of Auburn by the Decedent or complaints from any source concerning Keadle during her time as City Clerk.  (Heskett Affidavit, ¶6)

16.     Ms. Heskett is unaware of any communications of any nature made by either the Decedent or Keadle directed to the City of Auburn.  (Heskett Affidavit, ¶7)

17.     Prior to hearing about the alleged events of December 3, 2010, giving rise to this action, Ms. Heskett had not heard of Keadle or the Decedent and had no information about either individual.  (Heskett Affidavit, ¶8)

18.     Ms. Denise Eggers is the Deputy City Clerk for the City of Auburn, and has served in this capacity since 1977.  (Eggers Affidavit, ¶2)

19.     Ms. Eggers' duties as Deputy City Clerk include serving as the receptionist at City Hall in Auburn, Nebraska, in which capacity she fields complaints and concerns brought by citizens.  (Eggers Affidavit, ¶3)

20.     During Ms. Eggers' tenure as Deputy City Clerk, she does not recall receiving any complaints made to the City of Auburn by the Decedent or complaints from any source concerning Keadle.  (Eggers Affidavit, ¶4)

21.     Ms. Eggers is unaware of any communications of any nature made by either the Decedent or Keadle directed to the City of Auburn.  (Eggers Affidavit, ¶5)

22.     Prior to hearing about the alleged events of December 3, 2010, giving rise to this action, Ms. Eggers had not heard of Keadle or the Decedent and had no information about either individual.  (Eggers Affidavit, ¶6)

## LEGAL STANDARDS

### I.     Rule 12(b)(6)

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this standard does not require "detailed factual allegations," it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*.  (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955).  A claim

is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955).

Although a court must accept as true all factual allegations when analyzing a Rule 12(b)(6) motion, it is not bound to accept as true legal conclusions that have been framed as factual allegations. *Id.* "While legal conclusions provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. at 1950.

## II.   Rule 56

A motion for summary judgment shall be granted by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). *See, also, Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011). On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Wood v. SatCom Marketing, LLC*, 705 F.3d 823, 828 (8th Cir. 2013).

It is the moving party's burden to establish that no genuine issue of material fact exists. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). If the moving party does not meet its initial burden, summary judgment must be denied even if no affidavits or other evidence have been submitted in opposition to the motion. *See id.* at 159-60. After the moving party has met its burden, however, "the non-moving party

may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Singletary v. Missouri Dept. of Corrections*, 423 F.3d 886, 890 (8th Cir. 2005).

## ARGUMENT

Plaintiffs have failed to assert any specific allegations against the City of Auburn or direct any of their claims against the City of Auburn. Rather, they have asserted them generally against all Defendants. They have failed to articulate any act or omission allegedly taken by the City of Auburn that was allegedly negligent or violated any right of Plaintiffs. These deficiencies alone are sufficient to warrant dismissal of all claims against the City of Auburn. "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). The City of Auburn has not been given fair notice of the claims made against it and is therefore entitled to dismissal from this action on that basis alone. It is also entitled to dismissal for the following additional reasons.

I.   **Plaintiffs have failed to state a claim for negligence or wrongful death against the City of Auburn, entitling the City of Auburn to dismissal of such claims or, alternatively, to judgment as a matter of law on such claim.**

Plaintiffs' First Amended Complaint fails to state a claim for negligence or wrongful death against the City of Auburn. An action for wrongful death allows the next of kin to recover the amount of damages they have sustained as a result of a decedent's death. Neb. Rev. Stat. §§ 30-809 and 30-810. Section 30-809 created a right of action for wrongful death in Nebraska and is "intended to authorize an action to recover damages from a tort-feasor for negligence or

some other action resulting in the death of another person." *Olsen v. Farm Bureau Ins. Co. of Nebraska*, 259 Neb. 329, 339, 609 N.W.2d 664, 671 (2000). When an action for wrongful death sounds in negligence, to determine whether a complaint states facts sufficient to constitute a cause of action, it is necessary to examine whether specific facts are enumerated which would serve to establish that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that breach was the proximate cause of the plaintiff's damages. *Brandon v. County of Richardson*, 252 Neb. 839, 842-43, 566 N.W.2d 776, 779 (1997). A negligence action brought under the Political Subdivisions Tort Claims Act has the same elements as a negligence action against an individual, i.e., duty, breach of duty, causation, and damages. *Id.* at 842, 566 N.W.2d at 779.

Plaintiffs have failed to allege the necessary elements of a negligence or wrongful death claim against the City of Auburn. Plaintiffs' First Amended Complaint contains nothing more than conclusory allegations of negligence against all Defendants, devoid of specific allegations of negligence against the City of Auburn or any supporting factual allegations to state a claim for negligence that is plausible on its face. In particular, Plaintiffs have failed to assert any factual allegations that, if true, would establish that the City of Auburn owed a duty to the Decedent. In fact, Plaintiffs' First Amended Complaint fails to allege that the City of Auburn had any relationship or contact with either the Decedent or Keadle prior to the Decedent's death. They claim only that the alleged events of December 3, 2010, occurred "in and around" the City of Auburn, among other places. (Doc. #6, First Amended Complaint, ¶13) Such claims are insufficient to show that the City of Auburn had a duty to either control the conduct of Keadle or protect the Decedent, and thus fail to satisfy the first element necessary for a claim of negligence or wrongful death.

Under Nebraska law, "state and local governments, generally may not be held liable for failure to protect individual citizens from harm caused by criminal conduct." *Bartunek v. State*, 266 Neb. 454, 459, 666 N.W.2d 435, 440 (2003).  The Nebraska Supreme Court has adopted Restatement (Second) of Torts § 315 at 122 (1965) (hereinafter "the Restatement), which provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a)  a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b)  a special relation exists between the actor and the other which gives to the other a right to protection.

*Id.*; *Ehlers v. State*, 276 Neb. 605, 609, 756 N.W.2d 152, 156 (2008).  *See, also, Ginapp v. City of Bellevue*, 282 Neb. 1027, 1033, 809 N.W.2d 487, 492 (2010).

In order to establish any duty by the City of Auburn, it was necessary for Plaintiffs to allege facts showing a special relationship between the City of Auburn and either the Decedent or Keadle, which they failed to do.  They have made only conclusory claims that the Defendants had a duty to protect the Decedent, which is insufficient without any factual allegations of a special relationship between the City of Auburn and either the Decedent or Keadle giving rise to such a duty.  They have also failed to allege that the City of Auburn breached any alleged duty and have failed to make any factual allegations of a breach.

In fact, there are no set of facts Plaintiffs could assert to establish a special relationship existed between the City of Auburn and either the Decedent or Keadle, and the undisputed evidence shows that no such relationships existed.  Although Plaintiffs allege that Peru State

College is located in Auburn, Nebraska (Doc. #6, Plaintiffs' First Amended Complaint, ¶14), this is inaccurate. Peru State College is not, in fact, located in the City of Auburn. (Lottman Affidavit, ¶3; Heskett Affidavit, ¶3) Therefore, any acts that Plaintiffs allege took place at Peru State College have no connection to the City of Auburn, and certainly cannot form the basis of any claim against the City of Auburn.

Furthermore, there is absolutely no evidence of any relationship or any connection whatsoever between the City of Auburn and either the Decedent or Keadle. The City of Auburn Police Department has maintained electronic records since at least January 2003, and has no records containing any reference to or mention of Keadle or the Decedent. (Lottman Affidavit, ¶¶3, 8-9) There is no evidence of any relationship or contact between the City of Auburn Police Department and either Keadle or the Decedent, and certainly no evidence of a custodial relationship with either. (Lottman Affidavit, ¶¶9-10)

Additionally, there is absolutely no evidence of any written complaints made to the City of Auburn by the Decedent or complaints from any source concerning Keadle. (Heskett Affidavit, ¶6) There is no evidence of any communications of any nature made by either the Decedent or Keadle directed to the City of Auburn. (Heskett Affidavit, ¶7; Eggers Affidavit, ¶¶4-5) Prior to hearing of the alleged events of December 3, 2010, giving rise to this action, neither the City of Auburn's City Clerk, Ms. Heskett, nor its Deputy City Clerk, Ms. Eggers, had even heard of Keadle or the Decedent, and had no information about either individual. (Heskett Affidavit, ¶8; Eggers Affidavit, ¶6)

These undisputed facts show that no special relationship existed between the City of Auburn and either the Decedent or Keadle, and there are no set of facts that Plaintiffs could allege to establish that the City of Auburn owed any duty to the Decedent or Plaintiffs or that it

breached any duty.  There are also no set of facts that Plaintiffs could allege to show that any acts or omissions by the City of Auburn caused any of Plaintiffs' alleged damages.  Therefore, even if this Court determines that Plaintiffs have stated a negligence or wrongful death claim for relief against the City of Auburn, the City of Auburn is nonetheless entitled to judgment in its favor because the undisputed facts show that it owed no duty to Plaintiffs, breached no duty owed to Plaintiffs, and caused no damages to Plaintiffs.

II.     **Plaintiffs have failed to state a claim for relief against the City of Auburn under 42 U.S.C. § 1981, entitling the City of Auburn to dismissal of such claims; alternatively, the City of Auburn is entitled to judgment as a matter of law on Plaintiffs' claims under 42 U.S.C. § 1981.**

Plaintiffs have failed to state a claim for relief against the City of Auburn under 42 U.S.C. § 1981.  Section 1981 provides, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To establish a prima facie case of discrimination under § 1981, a plaintiff must show: (1) that he or she is a member of a protected class; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981.  *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004).  "Allegations that the defendant's acts were purposefully discriminatory and racially motivated are essential to an action under Section 1981."  *Smith v. Planned Parenthood of the St. Louis Region*, 2005 WL

2298202, *2 (E.D. Mo. Sept. 21, 2005) (citing *Alberto v. Carovano*, 851 F.2d 561, 572-73 (2d Cir. 1988)).  *See, also, General Building Contractors Assoc., Inc. v. Pennsylvania*, 458 U.S. 375, 102 S. Ct. 3141, 3150, 73 L. Ed. 2d 835 (1982) ("We conclude, therefore, that § 1981 . . . can be violated only by purposeful discrimination.")

In order to succeed on a § 1981 claim against a municipal entity[1], a plaintiff must show that the municipality's official policy or custom is discriminatory.  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735-36, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *De v. City of Chicago*, 2012 WL 6605009, *14 (N.D. Ill. Dec. 14, 2012).   An action under § 1981 cannot rest on an allegation of negligence in application of a municipal entity's laws.  *See, e.g., Roe v. Keady*, 329 F.3d 1188, 1191-92 (10th Cir. 2003) (holding that in an action under § 1981 and § 1983 alleging that state social workers failed to protect a minor Native American child from abuse by its natural parents, any allegation that social workers misjudged danger to child, or erred in concluding that they had to defer to the Bureau of Indian Affairs in assessing and responding to that danger, did not violate child's equal protection rights or discriminate against him; equal protection was not implicated by allegations of negligence or mistake).  Plaintiffs' allegations under § 1981 indeed rest solely on allegations of negligence which, as already discussed, are insufficient to support a claim against the City of Auburn.  In their First Amended Complaint, Plaintiffs cite alleged violations of § 1981 as examples of the ways in which Defendants were allegedly negligent.  (Doc. #6, First Amended Complaint, ¶¶16-18)

---

[1] Section 1981 alone does not provide a cause of action against local state actors, government entities, or municipalities. *Jett*, 491 U.S. at 731, 109 S. Ct. 2702; *De v. City of Chicago*, 2012 WL 6605009, at *15.  A plaintiff must assert a cause of action against state actors under § 1983 to remedy violations of the civil rights secured by § 1981. *Jett*, 491 U.S. at 731.  Plaintiffs cite § 1983 in conjunction with § 1981.  The City of Auburn does not believe Plaintiffs' mere reference of § 1983, in conjunction with § 1981, is sufficient to state a cause of action under § 1981.  However, even if it were sufficient to provide a cause of action, for the other reasons set forth in this brief Plaintiffs have failed to state a claim for relief under either § 1981 or § 1983.

Plaintiffs' claims under § 1981 are clearly nothing more than claims of negligence couched as § 1981 actions, and should be dismissed for this reason alone.

Even if Plaintiffs could get past this initial, determinative hurdle, their § 1981 claims still fail because their passing references to § 1981, along with some conclusory allegations, are wholly insufficient to state a plausible cause of action against the City of Auburn under § 1981. Plaintiffs have alleged, first, that Defendants failed to protect the Decedent "based upon her race and sex" by "allowing Keadle to enroll in Peru State College and renting a Dormitory room to him when a background check would have excluded Keadle from the University." (Doc. #6, First Amended Complaint, ¶17) These are not allegations against the City of Auburn and state no claim against the City of Auburn. As set forth above, Peru State College is not located in the City of Auburn. (Lottman Affidavit, ¶3; Heskett Affidavit, ¶3) There is no evidence that the City of Auburn had any connection, whatsoever, to Peru State College. Plaintiffs continue, alleging, "[B]ased upon the white race of Keadle he was granted privileges and immunities which included a substandard investigation into his criminal past and a failure by the defendants to terminate his enrollment at the college based upon his race." (Doc. #6, First Amended Complaint, ¶17) Again, these are not allegations directed against the City of Auburn. Moreover, as set forth above, the City of Auburn had no relationship with Keadle and no duty to investigate his alleged criminal past. (Lottman Affidavit; Heskett Affidavit; Eggers Affidavit) Plaintiffs' final allegation that references § 1981, that Defendants violated § 1981 by "failing to implement a system to protect [the Decedent] because of her race as an African American and her sex as a female," (Doc. #6, First Amended Complaint, ¶18) also fails to state a claim against the City of Auburn. Again, this is not an allegation directed against the City of Auburn, and the City of Auburn had no duty to protect the Decedent.

Even assuming that Plaintiffs have made any specific allegations against the City of Auburn under § 1981, they have still failed to state a claim upon which relief can be granted against the City of Auburn.  As set forth above, the City of Auburn had no relationship with the Decedent and no duty to protect the Decedent.  *See Gatlin v. Green*, 227 F. Supp. 2d 1064, 1076 (D. Minn. 2002) (special relationship, for constitutional purposes, does not extend beyond custodial situations).  Additionally, § 1981 provides no cause of action for sex discrimination; it provides a cause of action only for discrimination on the basis of race.  *See Manning v. Metro. Life Ins. Co., Inc.*, 127 F.3d 686, 689 (8th Cir. 1997) (holding that § 1981 prohibits only purposeful racial discrimination in the making and enforcing of contracts; it does not encompass sex discrimination claims), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

Additionally, Plaintiffs have failed to allege an official policy or custom of the City of Auburn that was allegedly discriminatory, have failed to allege that any acts by the City of Auburn intended to discriminate against the Decedent on the basis of race, and have failed to allege that any actions by the City of Auburn were "purposefully discriminatory and racially motivated."  Indeed, there is no factual basis for allegations of this nature against the City of Auburn.  Finally, Plaintiffs have also failed to allege that any asserted discrimination by the City of Auburn interfered with a protected activity under § 1981.  While § 1981 prohibits racial discrimination in "'all phases and incidents'" of a contractual relationship, it "'does not provide a general cause of action for race discrimination.'"  *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) (quoting *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 302, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001)).  "'Any claim brought under § 1981, therefore, must initially identify an impaired

'contractual relationship' under which the plaintiff has rights.'" *Id.* at 468-69 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006)). Plaintiffs have failed to meet any of these standards. For all of these reasons, Plaintiffs have failed to state a claim for relief under § 1981 and the City of Auburn is entitled to dismissal of all claims asserted against it by Plaintiffs under § 1981.

Alternatively, the City of Auburn is entitled to summary judgment in its favor on Plaintiffs' claims under § 1981. As explained in more detail in the following section, there is no constitutional duty for a state actor to protect an individual from private harm, in the absence of a "special relationship" between the individual and state actor. *Burton v. Richmond*, 276 F.3d 973, 978 (8th Cir. 2002); *Harpole v. Arkansas Dept. of Human Services*, 820 F.2d 923, 926 (8th Cir. 1987). It is undisputed that no "special relationship" existed between the City of Auburn and the Decedent. (Lottman Affidavit, ¶¶8, 10; Heskett Affidavit, ¶¶6-8; Eggers Affidavit, ¶¶4-6) As set forth above, the undisputed evidence shows that the Plaintiffs cannot even establish a prima facie claim of negligence against the City of Auburn, let alone any purposeful discriminatory acts taken by the City of Auburn against the Decedent. There is no evidence of any contact between the City of Auburn and the Decedent whatsoever, and certainly no relationship between the City of Auburn and the Decedent sufficient to give rise to a "special relationship," for constitutional purposes, between the City of Auburn and the Decedent. (*Id.*) There is therefore no basis upon which a claim for purposeful discrimination against the Decedent or a claim that the City of Auburn interfered with any protected activity of the Decedent under § 1981 could succeed. For these reasons, if this Court declines to grant the City of Auburn's Motion to Dismiss Plaintiffs' claims under § 1981, the City of Auburn submits that it is entitled to summary judgment on such claims.

III.    **Plaintiffs have failed to state a claim for relief against the City of Auburn under**
**42 U.S.C. § 1983, entitling the City of Auburn to dismissal of such claims;**
**alternatively, the City of Auburn is entitled to judgment as a matter of law on**
**Plaintiffs' claims under 42 U.S.C. § 1983.**

Plaintiffs have failed to state a claim for relief against the City of Auburn under 42 U.S.C. § 1983.  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . .

Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  *See Albright v. Oliver*, 510 U.S. 266, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994); *Gatlin v. Green*, 362 F.3d 1089, 1093 (8th Cir. 2004).  Municipal liability under § 1983, in particular, is premised on the existence of two prerequisites:  (1) a policy, practice, or custom must be attributable to the municipality through actual or constructive knowledge; and (2) the policy, practice, or custom must directly cause constitutional injury. *Gatlin*, 362 F.3d at 1094.  In this action, Plaintiffs have failed to allege the existence of a policy, practice, or custom of the City of Auburn that allegedly caused constitutional injury.  They have set forth nothing more than conclusory allegations that their rights were violated by the Defendants, but not by the City of Auburn in particular, and have alleged only that Plaintiffs' damages were due to the "negligence of the Defendants."  (Doc. #6, First Amended Complaint,

¶16)  Negligence is not sufficient for an actionable claim under § 1983.  *Harpole*, 820 F.2d at 926.  See, also, *DeShaney v. Winnebago County Dept. Soc. Servs.*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).

Plaintiffs have also failed to identify any constitutional injury that they have suffered. They have failed to set forth anything more than conclusory allegations, which do not satisfy their burden.  As the Eighth Circuit has stated, constitutional pleadings must not be conclusory, and must set for the claim in a manner in which, taking the pleaded facts as true, states a claim as a matter of law.  *Bediako v. Stein Mart, Inc.*, 354 F.3d at 839-40.  Plaintiffs have failed to do so, and have failed to state a claim for relief against the City of Auburn under § 1983.  The City of Auburn is therefore entitled to dismissal of all claims brought under § 1983.  *See Omni Behavioral Health v. Miller*, 285 F.3d 646, 655 (8th Cir. 2002) (dismissing a § 1983 claim that was an "unsupported and conclusory allegation").

Alternatively, for the reasons set forth in the previous sections, the City of Auburn is entitled to summary judgment in its favor on Plaintiffs' claims under § 1983.  As set forth above, Plaintiffs cannot establish that the City of Auburn had a special relationship with either the Decedent or Keadle under Nebraska negligence law that was sufficient to give rise to a duty by the City of Auburn to protect the Decedent (Lottman Affidavit, ¶¶8, 10; Heskett Affidavit, ¶¶6-8; Eggers Affidavit, ¶¶4-6), and therefore cannot even succeed on a common-law negligence claim. The standard is much greater for constitutional claims.  *DeShaney*, *supra* (holding that a state had no constitutional duty to protect child from his father after receiving reports of possible abuse); *Harpole*, *supra*.  The constitution imposes upon governmental entities affirmative duties of care and protection with respect to particular individuals only in very limited circumstances— where there is a "special relationship" between the individual and the entity.  *Burton*, 276 F.3d at

978.  For constitutional purposes, a special relationship does not exist in situations other than between a prison and its inmates.  *Id*. at 926-27.  Absent the control found in a prison environment, there is no constitutionally mandated duty to protect one private citizen from another.  *Id*. at 927.  Plaintiffs have neither alleged, nor could they prove, that either Keadle or the Decedent was ever in the custody of the City of Auburn.  (Lottman Affidavit, ¶10)  They cannot even establish a special relationship under common-law tort law.  Therefore, Plaintiffs cannot establish a constitutional violation based on the City of Auburn's alleged failure to protect the Decedent from Keadle.  The City of Auburn is therefore entitled to summary judgment on Plaintiffs' § 1983 claims.

## CONCLUSION

Plaintiffs have failed to state a claim upon which relief can be granted against the City of Auburn.  They have alleged mere conclusory assertions against the Defendants.  They have failed to assert any specific allegations against the City of Auburn and the general allegations they have made lack factual matter to support any claims that are plausible on their face.  Therefore, the City of Auburn's Motion to Dismiss should be granted.  Alternatively, in the event this Court determines that Plaintiffs have met their initial burden of stating a claim for relief, there are no genuine issues of material fact and the undisputed evidence establishes that Plaintiffs will be unable to recover on any of their claims against the City of Auburn, entitling the City of Auburn to judgment as a matter of law.

DATED this 12th day of April, 2013.

THE CITY OF AUBURN, NEBRASKA,
Defendant,

By   *S/  Thomas J. Culhane*
Thomas J. Culhane, NE State Bar #10859
Heather B. Veik, NE State Bar #23463
ERICKSON | SEDERSTROM, P.C.
Regency Westpointe, Suite 100
10330 Regency Parkway Drive
Omaha, NE 68114
(402) 397-2200
(402) 390-7137 Fax
culhane@eslaw.com
veik@eslaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **Brief in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment by Defendant City of Auburn** was filed using the CM/ECF system and served electronically upon all parties in interest via said system on this ___ day of April, 2013, upon:

| | |
|---|---|
| Timothy L. Ashford | tash178346@aol.com |
| Terri L. Crawford | tlcrawford.law@gmail.com |
| Ryan C. Gilbride | ryan.gilbride@nebraska.gov |
| Michael K. Huffer | mhuffer@ctagd.com |
| Ronald F. Krause | rkruase@ctagd.com |
| Robert S. Keith | rkeith@ekoklaw.com |
| Christina M. Kroupa | ckroupa@ekoklaw.com |
| John C. Wiltse | jwiltse@nebraska.edu |

*S/ Thomas J. Culhane*
