IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LATANYA THOMAS, Special Administrator of the Estate of Tyler Thomas,<br><br>Plaintiff,<br><br>vs.<br><br>BOARD OF TRUSTEES OF THE NEBRASKA STATE COLLEGES AND JOSHUA KEADLE,<br><br>Defendants. | 8:12-CV-412<br><br><br><br>MEMORANDUM AND ORDER |

    The matter before the Court is the Motion to Dismiss for Failure to State a Claim or in the Alternative Motion For Summary Judgment (filing 80) filed by the defendant the Board of Trustees of The Nebraska State Colleges (the Board). For the reasons discussed below, the Board's motion will be granted, but the plaintiff will be granted leave to amend her complaint.

### BACKGROUND

    In 2010, Tyler Thomas (Tyler) was attending Peru State College. Filing 76 at ¶ 2. She was 19 years old at the time, and lived in a dormitory on campus. Filing 76 at ¶¶ 15, 22. Defendant Joshua Keadle was also a student at Peru State and lived in the same dormitory. Filing 76 at ¶¶ 21–22. Tyler was last seen on December 3, 2010, and the last person she was seen with was Keadle. Filing 76 at ¶¶ 12–13. The complaint alleges that on December 3, 2010, Tyler was abducted, sexually assaulted, and killed by Keadle. Filing 76 at ¶¶ 12, 13, 16. Although Tyler's body has never been recovered, she has been declared dead by a Nebraska court. Filing 95-4.

    Tyler's mother, LaTanya Thomas (Thomas), brings this case, asserting wrongful death claims on behalf of Tyler's next of kin, and survival claims on behalf of Tyler's estate. Thomas' wrongful death and survival claims against the Board are each premised on both 42 U.S.C. § 1983 (for alleged violations of Tyler's rights to due process and equal protection) and Title IX of the

Education Amendments of 1972, 20 U.S.C. § 1681(a) *et seq*. Thomas also brings state tort claims against Keadle.

## STANDARD OF REVIEW[1]

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*.

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Iqbal,* 556 U.S. at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id*. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id*. at 556.

## ANALYSIS
### I. THOMAS' § 1983 CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY

---

[1] Although styled in the alternative as a motion for dismissal under Fed. R. Civ. P. 12(b)(6) or for summary judgment under Fed. R. Civ. P. 56, only the Board's motion to dismiss is before the Court at this time. The Board's motion for summary judgment only contested Thomas' capacity as representative of her daughter's estate. *See*, filing 81; filing 82 at 4–6. The Court previously found Thomas to have been duly appointed as special representative of Tyler's estate (filing 112), and the Court declines the Board's invitation to reconsider this finding. Filing 118 at 4.

The Eleventh Amendment immunizes an unconsenting state from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action. *Becker v. Univ. of Neb. at Omaha,* 191 F.3d 904, 908 (8th Cir. 1999). This immunity encompasses not only actions where a state is actually named as a defendant, but also certain actions against state instrumentalities. *Id.* The Board is such an instrumentality, and is therefore entitled to immunity. *O'Connor v. Peru State Coll.,* 605 F. Supp. 753, 759 (D. Neb. 1985), *aff'd* 781 F.2d 632 (8th Cir. 1986); *see also Krejci v. Bd. of Tr. of Neb. State Coll. Acting as Chadron State Coll.,* 2010 WL 1815407, at *7 (D. Neb. May 5, 2010).

There are three exceptions to Eleventh Amendment immunity. First, a state may waive immunity by consenting to suit in federal court; second, Congress may abrogate the state's immunity through a valid exercise of its powers; and third, under *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may file suit against state officials seeking prospective equitable relief for ongoing violations of federal law. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't,* 510 F.3d 681, 695 (7th Cir. 2007). Nebraska has not consented to suit, *Becker,* 191 F.3d at 908, and Thomas does not seek equitable relief, which leaves only the second exception.

Congress has unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity for Title IX claims. 42 U.S.C. § 2000d–7; *Crawford v. Davis,* 109 F.3d 1281, 1283 (8th Cir. 1997). However, Congress has not done so with regard to § 1983 claims. *Hadley v. N. Ark. Cmty. Tech. Coll.,* 76 F.3d 1437, 1438 (8th Cir. 1996). Therefore, Thomas' claims under § 1983 must be dismissed.[2]

II. THOMAS' COMPLAINT FAILS TO STATE A CLAIM UNDER TITLE IX

Title IX generally provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has found an implied private right of action for individuals whose Title IX rights have been violated, and held that this may support a claim for money damages. *See, Franklin v. Gwinnett Cnty. Pub. Sch.,* 503 U.S. 60 (1992); *Cannon v. Univ. of Chi.,* 441 U.S. 677 (1979).

---

[2] Because the dismissal is on jurisdictional grounds, it is without prejudice. *See Hart v. United States,* 630 F.3d 1085, 1091 (8th Cir. 2011); *see also, Ernst v. Rising,* 427 F.3d 351, 366–67 (6th Cir. 2005); *Freeman v. Oakland Unified Sch. Dist.,* 179 F.3d 846, 846–47 (9th Cir. 1999).

Sexual harassment constitutes "discrimination" under Title IX, and in certain limited circumstances, a funding recipient (e.g., a college or university receiving federal funds) may be subject to liability for student-on-student harassment. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 644, 650 (1999). However, funding recipients may only be held liable for damages caused by their own misconduct. *Id.* at 640–41. Per the terms of the statute, in order for the statute to be violated, the recipient *itself* must exclude persons from participation in, deny persons the benefit of, or subject persons to discrimination under the recipient's programs and activities. *Id.*

To state a Title IX claim based on peer harassment, a plaintiff must allege facts that support the following elements. As a threshold matter, the defendant must be a Title IX funding recipient. *Davis,* 526 U.S. at 640. Then, the plaintiff must show that the defendant was (1) deliberately indifferent (2) to known acts of discrimination (3) which occurred under its control. *Id.* at 644–650; *Wolfe v. Fayetteville, Ark. Sch. Dist.,* 648 F.3d 860, 864 (8th Cir. 2011). Per the language of Title IX, the acts of discrimination must be "on the basis of sex." *Wolfe,* 648 F.3d at 864. And student-on-student harassment can constitute discrimination only if it is so severe, pervasive, and objectively offensive that it effectively deprived the plaintiff of access to the educational opportunities or benefits provided by the defendant. *Id.* (citing *Davis,* 526 U.S. at 650).

The Board does not dispute that it is a funding recipient. Filing 76 at ¶ 6. And there is no doubt that if the facts alleged in the complaint are true, Tyler underwent sexual harassment that was so severe as to deprive her of access to education. *See Soper v. Hoben,* 195 F.3d 845, 855 (6th Cir. 1999). The Board argues, however, that Thomas has failed to allege sufficient facts to support the remaining elements: that the Board had actual knowledge of prior acts of discrimination by Keadle, that the alleged sexual assault and killing took place in a context subject to the Board's control, and that these acts were the result of deliberate indifference by the Board.

The Court finds that Thomas' complaint has sufficiently pleaded actual knowledge on the Board's part. However, the complaint fails to disclose the location where Keadle is alleged to have sexually assaulted and killed Tyler. Lacking this key information, the complaint does not adequately allege that the acts of harassment occurred in a context subject to the Board's control. That said, the Court reasonably concludes that Thomas may be able to cure this defect in an amended pleading, and the Court will therefore allow Thomas to amend her complaint. If this omission is remedied, it is likely that the complaint will adequately allege deliberate indifference on the Board's part.

### A. Actual Knowledge of Prior Acts of Harassment

To state a claim for peer harassment under Title IX, Thomas must allege facts showing that an appropriate school official had actual knowledge of discrimination in the school's programs. *Roe v. St. Louis Univ.*, ___ F.3d ___, 2014 WL 1181097, at *5 (8th Cir. March 25, 2014). An appropriate official is one who, at a minimum, had the authority to address the alleged discrimination and institute corrective measures on the school's behalf.[3] *Id.* This is not a negligence standard, and liability cannot lie for what the school should have known. *Davis*, 526 U.S. at 642.

Thomas has pleaded sufficient facts to show actual knowledge on the Board's part. Thomas alleges that prior to Tyler's disappearance on December 3, 2010, the Board had received a report that Keadle had sexually assaulted another young woman on campus. Filing 76 at ¶ 21(d). This allegation is crucial to Thomas' case. While the complaint lacks the factual details that a jury would need in order to evaluate the nature and extent of the Board's knowledge, this allegation is sufficient to state a claim for relief.

In the related context of teacher-student harassment, the Supreme Court has held that a single complaint of a teacher making inappropriate comments "was plainly insufficient to alert the principal to the possibility that [the teacher] was involved in a sexual relationship with a student." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998). However, "'the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student.'" *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006) (quoting *Doe v. Sch. Admin. Dist. No. 19,* 66 F. Supp. 2d 57, 62 (D. Me. 1999)).

Instead, courts have generally held that the school must have "'actual knowledge of a *substantial risk* of abuse to students based on prior complaints by other students.'" *Id.* (quoting *Doe A. v. Green,* 298 F. Supp. 2d 1025, 1033 (D. Nev. 2004)); *see also*, *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000); *Gordon ex rel. Gordon v. Ottumwa Cmty. Sch. Dist.*, 115 F. Supp. 2d 1077, 1082 (S.D. Iowa 2000). Thomas alleges that the Board had received a report that Keadle had already sexually assaulted another student on campus. Drawing all reasonable inferences in Thomas' favor, it may plausibly be inferred that the Board therefore had actual knowledge that Keadle posed a substantial risk of sexually assaulting another student.

---

[3] The Board's argument focuses solely on *what* was known. In other words, whether the disputed facts were known by an "appropriate" official is not an issue at this time.

This does not present a situation where a school was called upon to realize a risk of serious abuse based upon previous reports of unrelated or merely inappropriate conduct. For example, in *Escue*, a university professor was alleged to have sexually harassed a student. 450 F.3d at 1154. The professor had previously dated two non-traditional students nearly his own age. And several years prior to the alleged harassment, there had been complaints of inappropriate name-calling and a single incident of inappropriate touching. These facts were not enough to provide the university with actual knowledge that the professor presented a substantial risk of abuse to other students. *Id.* Here, by contrast, the risk that Keadle allegedly presented was of the same nature and severity as his alleged previous misconduct.[4]

Thomas has also alleged that the Board was aware of other facts that, she argues, showed Keadle posed a substantial risk to other students. For example, she points to the fact that he was an older, male student who lived in a dormitory that also housed young women. Filing 76 at ¶ 21(b). And she claims that the women's basketball team did not want Keadle to associate with them because they thought he was "creepy." Filing 76 at ¶ 10. But to state a claim under Title IX, Thomas must allege that the Board had actual knowledge of a specific, substantial risk. It is not enough to allege facts suggesting that the Board should been aware of such a risk. This is not to say that these allegations, if proven, would not be relevant to showing what the Board knew and the adequacy of its response. But at this stage, Thomas' complaint states a claim for relief with or without these allegations.[5]

The Board argues that Thomas has failed to provide any factual allegations "as to the nature and extent of the alleged prior acts of harassment by defendant Keadle and whether those prior acts of harassment were so severe and objectively offensive that they deprived the victim of access to educational opportunities." Filing 118 at 5. This argument is a non-starter. Sexual assault is, by its very nature, the sort of thing that can be expected to interfere with a student's ability to function at school.

---

[4] To state a claim for relief, Thomas need not allege that the Board was aware of a substantial risk that Keadle would not only assault, but also kill a fellow student. Therefore, the Court has no cause at this time to speculate on the effect that awareness, or lack thereof, might have on the extent of any liability.

[5] Similarly, Thomas alleges that Keadle had a criminal record of some kind, and that he had previously been subject to discipline for "harassing" female students. Filing 76 at ¶¶ 20, 21(a). Notably lacking from these allegations is any suggestion that the discipline was related to the previous sexual assault. Similarly, the complaint fails to disclose if Keadle's criminal record or prior acts of harassment involve any acts of sexual misconduct.

Next, the Board contends that the actual knowledge requirement of Title IX means that a funding recipient cannot be liable unless it had actual knowledge of the harassment of the plaintiff, as opposed to other students. This argument is not supported by *Davis* or its reasoning, or by the text of Title IX. And this precise argument has been rejected by almost every court to have considered the matter.[6] *See, e.g., Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1257 (11th Cir. 2010); *Escue,* 450 F.3d at 1153; *Delgado v. Stegall,* 367 F.3d 668, 672 (7th Cir. 2004), *overruled on other grounds in Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009); *Brodeur v. Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 208 (D.N.H. 2009); *J.K. v. Ariz. Bd. of Regents,* 2008 WL 4446712, at *13–14 (D. Ariz. Sept. 30, 2008); *but see Baynard v. Malone,* 268 F.3d 228, 238 (4th Cir. 2001). This Court likewise concludes that "the actual notice standard is met when an appropriate official has actual knowledge of a substantial risk of abuse to students based on prior complaints by other students." *Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d 679, 687–88 (W.D. Ky. 2003).

Finally, the Board contends that only actual knowledge of prior harassment will suffice under Title IX, not mere awareness of reports or allegations of sexual assault by Keadle. In support of this argument, the Board cites *Shrum ex rel. Kelly v. Kluck,* 249 F.3d 773 (8th Cir. 2001). But *Shrum* is readily distinguished from the present case, and the Court finds the Board's argument unpersuasive. In *Shrum*, the court found that the school did not have actual knowledge of a teacher's misconduct because police and school investigations into reports of the misconduct proved to be inconclusive. *See id.* at 775, 780, 782. Notably, the district court in *Shrum* dismissed the case at summary judgment, not on a motion to dismiss. *Id.* at 775. That difference is key.

Thomas' allegation—that the Board had received a report that Keadle sexually assaulted another student—is straightforward, and no further elaboration is necessary to state a claim. Certainly, more detail will ultimately be required to weigh the credibility of this report and to assess the extent of the Board's knowledge. But whether Thomas can eventually come forward with such evidence is not dispositive at this stage. Instead, Thomas need only provide a short and plain statement of the claim showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Iqbal,* 556 U.S. at 677–78. While the facts alleged in Thomas' complaint are far from detailed, she has provided

---

[6] The Board argues that a contrary rule was stated in *Pahssen v. Merrill Cmty. Sch. Dist.,* 668 F.3d 356 (6th Cir. 2012). But the court in *Pahssen* said nothing of the sort. That case merely held that prior acts of harassment directed at third parties could not be used to show that the harassment endured by the plaintiff was severe and pervasive. *Id.* at 360–63.

more than mere conclusions or naked assertions, and has given the Board fair notice of the grounds on which her claim rests. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Additionally, the Court must draw all reasonable inferences in Thomas' favor. And at this time, Thomas is entitled to an inference that the report received by the Board was credible. Unlike *Shrum*, there are no facts alleged that call into question the veracity or substance of the report. Thus, Thomas has alleged sufficient factual matter to nudge her claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570.

### B. Context and Location

Liability under Title IX is limited to circumstances wherein the school exercises substantial control over both the harasser and the context in which the harassment occurs. *Davis*, 526 U.S. at 645. The Board does not dispute that it had substantial control over Keadle, as he was a student. And the previous sexual assault is alleged to have occurred on campus. Although the precise location of that assault is not clear, the Board does not dispute its control over the campus generally.

However, the complaint fails to allege any facts regarding the location of Tyler's abduction, sexual assault, and killing. Given the tragic circumstances of this case, the plaintiff is in a difficult position when it comes to pleading these matters. Nonetheless, she must assert some facts that would situate the alleged acts in a context or location subject to the school's control.

The Eighth Circuit recently elucidated this precise point in *Roe v. St. Louis University*. The plaintiff in that case alleged that she was sexually assaulted by a fellow student at a party that took place in an off-campus apartment. 2014 WL 1181097, at *1. The court rejected the argument that "the University had disciplinary control over the rapist because he was a student and that universities may control certain off campus behavior due to the nature of the relationship between students and the institution." *Id.* at *7. It was not enough that the university could have exercised some control over the student-harasser. To state a claim under Title IX, the harassment must also have occurred in a context or location subject to the university's control. *Id.*

In her brief in opposition to the Board's motion to dismiss, Thomas asserts for the first time that Tyler was last seen alive "a few hundred feet from her dormitory" and that Thomas "expects to prove that on December 3, 2010, Keadle abducted [Tyler] from the Peru State campus, then raped and murdered her." Filing 91 at 2. Had these facts been raised in Thomas'

complaint, she would have adequately pleaded an act of harassment occurring in a context subject to the Board's control.[7]

However, these allegations appeared for the first time not in the pleadings, but in a brief. Generally speaking, a court is not required to give any effect to factual matters contained only in briefs or memoranda of law. *See Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994). While the Court is not required to assume the truth of these statements, that does not mean the Court must ignore them. Instead, on its own motion, the Court will grant Thomas leave to amend her complaint to include these allegations. Thomas shall submit any complaint, so amended, on or before April 22, 2014.

The Court will assume, at this point, that Thomas will be able to amend her complaint in this manner. If she does, then the remaining allegations in the existing complaint will suffice to allege deliberate indifference on the Board's part.

### C. Deliberate Indifference

Deliberate indifference is not a mere reasonableness standard. *Davis*, 526 U.S. at 649. On the contrary, a funding recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable under the known circumstances. *Id.* at 648. When considering cases under Title IX, courts must refrain from second-guessing the disciplinary decisions made by school administrators. *Id.*

The deliberate indifference standard also contains a causal element. In cases of peer harassment, a funding recipient will only be liable for damages if its indifference "subjected" its students to harassment. *Id.* at 644. That is, the indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. *Id.* at 645.

Thomas alleges that the Board was deliberately indifferent in failing to implement a number of specific measures, mostly related to student housing. She alleges, for example, that the Board should not have allowed an older, male student with a criminal record, such as Keadle, to live in the same dormitory as young, female students. Thomas similarly points to the Board's failure to warn students or their parents that dormitories would be open to students such as Keadle. Filing 76 at ¶¶ 22(a & d).

---

[7] For now, the Court will assume that Thomas' complaint would state a claim even if only the initial abduction occurred on campus. If one student abducts another student from campus, with the intent of then committing a sexual assault off campus, the initial contact is an indispensable first step in a course of illegal harassment. And if that first step occurred in a location subject to the school's control, then it may be that the school could have taken measures to prevent it from occurring. Of course, whether this would prove deliberate indifference depends on a number of circumstances, and remains to be seen.

However, Thomas has failed to allege any facts supporting a causal connection between these alleged failings and the harm that was visited upon Tyler. The complaint alleges only that Tyler and Keadle lived in the same dormitory. There is no suggestion that Keadle abducted Tyler from the dormitory or that any acts of harassment occurred there. The complaint does not allege that Keadle knew Tyler from the dormitory, or even that they had ever met. In sum, Thomas has failed to show that any of the alleged acts of indifference subjected Tyler to harassment by Keadle.

Reasonably construed, Thomas' complaint does contain another, more straightforward, allegation of deliberate indifference. She alleges that by allowing Keadle to remain on campus, the Board exposed Tyler and other students to a substantial risk of sexual assault. *See* filing 76 at ¶ 10. This allegation has more traction—assuming, of course, that Thomas' next complaint shows the harassment occurred on campus.

The Board argues that Thomas' allegations merely state a claim for negligence—that the Board "had notice of prior acts of sexual harassment by Keadle and took disciplinary action against Keadle, but, according to plaintiff, that action wasn't good enough." Filing 118 at 5. The Board is correct in noting that Title IX does not entitle plaintiffs to insist that schools take particular remedial actions. *Davis*, 526 U.S. at 648. But that does not mean that any response by school officials, no matter how minimal, will absolve the school of liability. *Vance*, 231 F.3d at 260–61. In some circumstances, "not good enough" is the same thing as clearly unreasonable.

It remains to be seen whether, in light of the known circumstances, it was clearly unreasonable to allow Keadle to remain on campus. *Davis*, 526 U.S. at 648. Those circumstances include the severity and nature of the alleged previous assault, what facts the appropriate officials knew, and what corrective or investigative measures they took. But according to the allegations in the complaint, the Board had reason to believe Keadle had sexually assaulted another student, yet took essentially no action to prevent another assault. That is enough to state a claim for relief. *See, e.g.*, *P.W. v. Fairport Cent. Sch. Dist.*, 927 F. Supp. 2d 76, 85–86 (W.D.N.Y. 2013); *Albiez v. Kaminski*, 2010 WL 2465502, at *6 (E.D. Wis. June 14, 2010); *Garcia v. Navasota Indep. Sch. Dist.*, 2010 WL 518759, at *1–2 (S.D. Tex. Feb. 2, 2010); *Ray v. Antioch Unified Sch. Dist.*, 107 F. Supp. 2d 1165, 1169–70 (N.D. Cal. 2000).

## CONCLUSION

Thomas' complaint has, with the exception of one important defect, set forth the factual framework needed to state plausible claims for relief under Title IX. If that defect is remedied, those claims should be allowed to proceed.

- 10 -

It remains to be seen whether Thomas can ultimately prove some or all of those allegations, but that is not the standard she must meet at this time. Accordingly,

IT IS ORDERED:

1. The Board's Motion to Dismiss for Failure to State a Claim (filing 80) is granted.

2. Thomas' claims against the Board are dismissed as follows:

    a. Thomas' third, fourth, fifth, and sixth causes of action, based upon 42 U.S.C. § 1983, are dismissed without prejudice (but without leave to replead before this Court); and

    b. Thomas' first and second causes of actions are dismissed, but with leave to replead.

3. Thomas shall have until April 22, 2014 to file an amended complaint. If no complaint is filed, Thomas' first and second causes of action will be dismissed with prejudice and without further notice.

Dated this 31st day of March, 2014.

BY THE COURT:

John M. Gerrard
United States District Judge