IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LATANYA THOMAS, Special | ) | Case No.  CI-12-127 |
| Administrator of the Estate | ) | |
| Of TYLER THOMAS, | ) | |
| | ) | THIRD AMENDED COMPLAINT |
| Plaintiff, | ) | AND REQUEST FOR JURY TRIAL |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| BOARD OF TRUSTEES  OF | ) | |
| THE NEBRASKA STATE | ) | |
| COLLEGES AND JOSHUA KEADLE, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff LaTanya Thomas, the Special Administrator of the

Estate of Tyler Thomas and for her causes of action against the Defendant, Board of

Trustees of the Nebraska State Colleges and Joshua Keadle states as follows:

1.      The Plaintiff was appointed the Special Administrator of the Estate of
        Tyler Thomas on October 24, 2013. Tyler Thomas's death certificate was
        issued on December 5, 2013.

2.      The Relation Back Doctrine is applicable to this lawsuit filed by the
        Plaintiffs herein.

3.      LaTanya Thomas is the mother of Tyler Thomas.

4.      Kevin Semans is the father of Tyler Thomas.

5.      Tyler Thomas is survived by her mother, LaTanya Thomas, her father
        Kevin Semans and her siblings, all who have suffered the loss of society,
        comfort, love and companionship as a result of the death of Tyler Thomas.

6.      Tyler Thomas, the deceased herein, was a student at Peru State College,
        which is a state institution under the government of the Board of Trustees
        of the Nebraska State Colleges pursuant to Neb. Const. art. VII, §13.

7.      Pursuant to 20 USC§ 1681, the Defendant, The Board of Trustees of the
        Nebraska State Colleges, had certain duties and obligations to the
        deceased, including, but not limited to, prohibiting her from being

1

subjected to sexual harassment and sexual assault.

8.     Title IX of the Education Amendments Act of 1972 (Title IX, 20 U.S.C.
       §§ 1681 *et seq*., and its implementing regulations, 34 C.F.R. part 106),
       prohibits discrimination on the basis of sex in education programs or
       activities operated by recipients of federal financial assistance.  Sexual
       harassments of students, which include acts of sexual violence, is a form
       of sex discrimination prohibited by Title IX.

9.     Sexual violence is a term which refers to physical sexual acts perpetrated
       against a person's will.

10.    At all times relevant the Defendant The Board of Trustees of the Nebraska
       State Colleges was a recipient of federal financial assistance.

11.    In January of 2001, the United States Department of Education, Office for
       Civil Rights, did issue "revised sexual harassment guidance; harassment of
       students by school employees, other students, or third parties."

12.    The purpose of the aforementioned document was to give guidance to
       institutions and their governing bodies such as the Defendant The Board
       of Trustees of the Nebraska State Colleges which operated at all times
       relevant as Peru State College.

13.    Further, the Defendant The Board of Trustees of the Nebraska State
       Colleges knew or should have known not only of its responsibilities to the
       deceased but further that it would be liable for monetary damages if a
       student sexually harasses another student in the school's program and

                 "Title IX, 20 U.S.C. §§ 1681et.seq, and its
                 implementing regulations, 34 C.F.R. part 106 prohibit
                 discrimination on the basis of sex and education
                 programs or activities operated by recipients of
                 federal financial assistance.  Sexual harassment of
                 students, which includes acts of sexual violence is a
                 form of a sex discrimination prohibited by Title IX."

14.    The Defendant, The Board of Trustees of the Nebraska State Colleges
       acting through its employees, officers, agents, faculty, staff and others did
       knowingly fail to act on allegations of sexual harassment by Defendant,
       Joshua Keadle and showed deliberate indifference and/or a conscious
       disregard to the harassment and danger created by the presence of
       Defendant, Joshua Keadle on the Peru State College campus even though
       it had sufficient notice and/or actual knowledge of Defendant, Joshua
       Keadle's sexual harassment of Tyler Thomas and/or female students on
       campus.

15. At all times relevant, the Defendant, The Board of Trustees of the Nebraska State Colleges failed to exercise appropriate measures to protect female students and the deceased from the actions of Defendant, Joshua Keadle, who at all times relevant, was under the control of the Defendant, The Board of Trustees of the Nebraska State Colleges.

16. On December 3, 2013 Tyler Thomas was a victim of an assault, abduction and was murdered as a student while attending Peru State College. Tyler Thomas was kidnapped while she was on the campus of Peru State College. She was walking on campus attempting to return to her dormitory when Defendant Joshua Keadle assaulted and kidnapped her she was later raped and murdered by Keadle.

17. The last known person who was seen with Tyler Thomas was her fellow student, Defendant, Joshua Keadle.

FIRST THEORY OF RECOVERY
FIRST CAUSE OF ACTION
(TITLE IX)

18. Plaintiff incorporates paragraph 1-17 as it fully sets forth herein.

19. The deceased, Tyler Thomas, was a 19-year-old female and, as such, was a member of a protected group.

20. Tyler Thomas was subjected to unwelcomed sexual harassment, sexual violence, rape and murder by a fellow student, Defendant, Joshua Keadle. The crime occurred while Tyler Thomas was on the campus of Peru State College, which is owned and operated by the Defendant, The Board of Trustees of the Nebraska State Colleges as set forth above.

21. That the harassment and violence was based on the Plaintiff's gender.

22. Said harassment and violence as perpetuated by Defendant, Joshua Keadle, unreasonably created an intimidating, hostile, abusive and/or offensive, educational environment.

23. That the Defendant, The Board of Trustees of the Nebraska State Colleges had notice of the sexual harassment of female students by Joshua Keadle prior to Ms. Thomas's abduction, rape and murder. Further, the Defendant, The Board of Trustees of the Nebraska State Colleges knew of Mr. Keadle's criminal history and/or criminal activity prior to December 3, 2010.

24. Keadle should not have been on the campus of Peru State College on December 3, 2010. He should not have been a student of Peru State College on December 3, 2010 and he would not have been on the campus of Peru State College had the Defendant, The Board of Trustees of the

Nebraska State Colleges protected Tyler Thomas's rights under Title IX and expelled Joshua Keadle prior to December 3, 2010.

25.   Plaintiffs reserve the right to amend this Complaint if necessary after discovery is allowed and completed. Some of the knowledge of the Defendant Board is set out in this Amended Complaint.

26.   Joshua Keadle lied on his application for admission with the Defendant The Board of Trustees of the Nebraska State Colleges, when he claimed he had no criminal convictions.  This false statement was discovered by the Defendant The Board of Trustees of the Nebraska State Colleges on or about September 12, 2010.

27.   Joshua Keadle never completed the required Housing Application either prior to his being placed in an on-campus residence hall or during the time he was in an on-campus residence hall from August 2010 until December 15, 2010.

28.   All students were required, prior to being allowed to live on campus in a residence hall under the management control and ownership of the Defendant The Board of Trustees of the Nebraska State Colleges, to complete a Housing Application.  Keadle, a male, was not required to complete his housing application. He specifically omitted the most important information in the Housing Application, that is, whether he had a criminal conviction.  Keadle, age 29, was allowed in a co-ed dormitory with female teenagers as his next-door neighbors even though he never completed the Housing Application.

29.   Keadle lied on his Employment Application to work with the Women's Varsity Basketball Team.  Keadle falsely claimed he did not have any criminal convictions on the Employment Application.

30.   On September 12, 2010 the Defendant Board's Director of Security and Campus Housing along with another employee of the Defendant Board learned the follow:

>      "Deputy Baker pulled this on Josh Keadle on his County laptop and found he has a rap sheet out of Fremont, NE "Midland's College."
>             He was convicted of robbery of $300.00 and stealing a purse in 2009, he had other burglaries but he is not charged on them he also had forcible fondling (RAPE) on a 18 year old female.  The charge was dropped he said there could be more in South Carolina where he came from but these are the ones he had in Nebraska."

The Defendant Board failed to investigate Keadles background in South Carolina at any time prior to December 3, 2010.

31. The Defendant, Board learned on September 12, 2010 that Keadle had been accused of fondling a female student while enrolled at Midland's College in Fremont, Nebraska.

32. Keadle should have been removed from the dormitory and/or expelled from Peru State College based upon his false applications for Admission, Housing and Employment immediately after the Defendant had actual knowledge of the falsity of said applications. The background check, which revealed Keadle's falsehoods and criminal record, including an assault charge by a Midlands College female student was ignored by the Defendant.

33. Although Keadle was not allowed to be a volunteer assistant and was ordered to have no official contact with the Women's Basketball team, he was allowed to live in a co-ed dorm next to female teenagers including the deceased.

34. On September 15, 2010 the Defendant Board acting through the Residence Life Department of Peru State College did not expel or take any action against Keadle even though it was now aware that he had falsified three different college documents. Instead the Defendant gave him additional time to move into room 36M in Davidson Hall, a co-ed dorm where Tyler Thomas was living in 35N, close by Keadle's room.

35. Keadle, who had entered Peru State College on probation, was by September 23, 2010 flunking each of his four classes. He had been advised that he should withdraw from school.

36. Keadle by September 23, 2010 was violating his academic probation contract, which was entered into as a condition of his admission at Peru State College. No disciplinary action was taken against Keadle, a male, by the Defendant. No female student was allowed to violate academic probation contract, lie on her Admission Application, lie on an Employment Application and not fill out a Housing Application and be allowed to live in a co-ed dormitory and remain a student at Peru State College.

37. By September 22, 2010 Keadle had sexually harassed at least one female student. This is knowledge that the Board had because a female student filed a sexual harassment complaint to which Keadle confessed. By September 23, 2010 the Defendant Board's Director of Security and Campus Housing who had been aware that Keadle had been accused of fondling a female student at Midland's College and that he had confessed to sexually harassing

5

a female student on Peru State College, recommended that Keadle be removed from the dormitory upon his pleading guilty to sexual harassment. Keadle did plead guilty to sexual harassment to the Student Court of Peru State College, but he was not removed from the dormitory.

38.     Rather than following the recommendation of the Board's Director of Security and Campus Housing, the Defendant Board instead imposed a minor sanction upon Keadle requiring him to complete online educational activity and complete 10 hours of community service by October 22, 2010. Keadle did not do the online education nor did he complete the community service. Keadle had been informed that his failure to comply with the above sanction could result in additional sanctions, none of which were imposed upon Keadle. Rather, Keadle was given the benefit of an additional 7 days to comply with the sanction. But, by October 30, 2010 he had not performed any of his required sanction.

39.     On September 22, 2010 a second female student complained that Keadle had sexually harassed her. On October 22, 2010 administrators working in the scope and course of their employment with the Defendant Board were aware that Keadle had no chance of passing any of his courses. The administrator in charge of monitoring Keadle's academic probation contract was aware that Keadle had not fulfilled the contract in September and October. No action was taken to expel Keadle.

40.     On October 29, 2010 Keadle committed a violent felony crime when he broke down a door in Davidson Hall and stole money from a student. The Defendant Board, rather than impose a sanction upon Keadle, reimbursed the student for the money that was stolen but did not expel Keadle from college nor remove him from the residence hall even though Keadle confessed to this crime which was a violation of the student code and a felony under Nebraska law, and should have resulted in an immediate suspension from the dormitory and college to be followed by expulsion pursuant to the Board's rules.

41.     The Defendant Board, through its administrators, knew that Keadle did not want to voluntarily withdraw from Peru State College because he claimed he had no where to live and that he had no money. Keadle admitted to the administrator in charge of monitoring his academic probation that he was not focusing on schoolwork and instead allowed him to enroll in Term II online classes and withdraw from classes in which he was failing. By October 22, 2010 Keadle was regularly missing required appointments with the person who was to monitor his probation contract, he was missing classes, not doing any school work and

6

was receiving grades well below failing. Yet, the Defendant Board took no action to expel Keadle.

42.     Throughout this time period Keadle, pursuant to his contract, was to attend classes and to get a certain amount of tutoring per week. However, Keadle failed to attend class, was accused of stealing a book from another student, and was not completing assignments.

43.     An employee of the Defendant, Board on October 21, 2010 summarized Keadle's status as a student living on campus as follows, "So we run an open door mission now?"  The response from another employee of the Defendant Board was, "Pretty much".

44.     By October 30, 2010 the Director of Security and Campus Housing, as well as other administrators, were aware of the recommendation that Keadle be expelled from housing for sexually harassing at least one student.  But, Defendant Board still allowed him to live in a co-ed dormitory with female students, 10 years younger than Keadle. Upon information and belief, on October 31, 2010, Keadle transported a young female with the initials K.J.from the Peru State College campus to the Peru Boat Docks, located on the outside of Peru, Nemaha County, Nebraska and forced K.J. to perform oral sex on him. Upon information and belief, Keadle forced K.J. to have sex with him numerous times on Peru State College Campus and this information was reported and was known to Peru State College prior to December 3, 2010.

45.     Upon information and belief Peru State college was aware Keadle kept and possessed firearms on campus prior to the disappearance of Tyler Thomas on December 3, 2010.

46.     The Defendant Board was aware of numerous instances of criminal activity by Keadle directed towards women prior to December 3, 2010.  Instance and/or allegations of criminal activity by Keadle prior to December 3, 2010 placed Defendant Board on notice of Defendant Keadle's potential for criminal behavior.  Prior to December 1, 2010 Keadle had sexually harassed Tyler Thomas. He had at least one occasion used profanity when speaking with her referring to her as a "bitch" in front of other students and/or employees of the Defendant Board.

47.     One employee of the Defendant Board described Keadle's conduct while a Peru State College student as "sexual deviance".

48.     All of the above demonstrated that Keadle posed a substantial risk of sexually assaulting and/or committing an act of violence against Tyler Thomas prior to December 3, 2010. Had Joshua Keadle been

expelled in September, October or November of 2010 he would not have been on campus on December 3, 2010 or he would have been arrested for trespassing had he appeared near the campus or on the campus of Peru State College and he would not have been able to commit the crime of kidnapping Tyler Thomas, raping Tyler Thomas and murdering Tyler Thomas.

49.     The above actions and inactions by the Defendant Board constituted deliberate indifference towards the rights of female students including Tyler Thomas.  Allowing Joshua Keadle to remain on campus exposed Tyler Thomas and other student to a substantial risk of sexual assault.  The sexual assault began with the abduction of Tyler Thomas from the Peru State College campus.  The Plaintiff reserves the right after discovery to amend their Complaint to set forth where the rape and murder took place if it was not on the campus.

50.     From and after September 12, 2010 the Defendant Board's actions and inactions in coddling Joshua Keadle increased the substantial risk of harm to female students including Tyler Thomas. The risk of harm escalated every day after September 12, 2010, as Keadle was aware the Defendant Board would not take any action against him regardless of his offense.  Keadle by December 3, 2010 knew that the Defendant Board was aware that he had lied on his application for Admission to Peru State College, had lied on his Employment Application with Peru State College and had failed to fill out his required Housing Application.  Defendant Keadle was aware that he was not attending class.  Defendant Keadle was aware that he was flunking classes.  Defendant Keadle was aware that Peru State College knew that he had confessed to sexually harassing a Peru State College student and had been accused of another sexual harassment by a Peru State College student. Further, Keadle was aware that Peru State College knew that he had confessed to a violent crime.  Further, Keadle was aware that Peru State College knew that he had taken the other actions set forth above.  Keadle knew that Peru State College had failed to take any actions to protect any female students from him including Tyler Thomas.

51.     The risk of harm to Tyler Thomas by December 3, 2010 was great and clearly apparent to the Defendants

52.     Further, the Defendant Board, had a duty pursuant to Title IX to inform students that it had in place a policy to protect them against sex harassment and sex discrimination.  Yet, the Board either falsely informed students such as Tyler Thomas and the parents of Tyler Thomas that they would comply with Title IX or failed to inform students and parents such as Tyler Thomas and her parents

that they would not comply with Title IX, all of this is in violation of Title IX. Various persons , including the President, Vice Presidents, Athletic Director, Varsity Coach, Deans, Board Members and others and were aware or should have been aware of the above conduct of Joshua Keadle.

53.    Peru State College is an educational institution that had a student body of approximately 2,492. Joshua Keadle was a non-traditional student and as such was known to the student body, faculty and administrators. His outrageous conduct set forth above was known to administrators, staff and faculty of the Defendant Board. All of the above conduct violated various codes, regulations and other policies and practices of the Board but no disciplinary action was taken against Keadle.

54.    Keadle's cumulative acts continued to increase the risk of harm to Tyler Thomas. The Board's deliberate indifference to the increasing risk posed by Keadle and its deliberate indifference to the knowledge of the risk posed by Keadle increased each day after September 12, 2010 until the abduction, rape and murder of Tyler Thomas on December 3, 2010, which occurred on the campus of Peru State College.

55.    Various officials and employees of the Board had authority to address the discrimination, harassment and outrageous conduct of Joshua Keadle, but said persons took no action. Those persons who had the authority to institute corrective measures on the school's behalf including the Director of Security of Campus Housing, Administrator Officials such as Vice Deans and Faculty Members, all had the authority to take corrective actions and all failed to do so.

56.    The Defendant Board acted to ban Joshua Keadle from being around female student athletes but then allowed him to move into a co-ed dormitory and live next to female students. Less than three months after ignoring the recommendation of the Director of Security of Peru State College Tyler Thomas was kidnapped from the campus of Peru State College.

57.    The Defendant, The Board of Trustees of the Nebraska State Colleges failed to take any corrective action to remedy the aforementioned discriminatory conduct and hostile learning environment. Its actions showed a deliberate indifference and/or conscious disregard of the rights of female students and specifically the deceased.

58.    At all times relevant the Defendant, The Board of Trustees of the Nebraska State Colleges, had authority over Defendant Joshua

Keadle and could have taken action to protect the deceased.

59.    That as a proximate result of the actions and inactions of the
       Defendant, The Board of Trustees of the Nebraska State Colleges
       set forth herein, the deceased was abducted, sexually assaulted and
       murdered on December 3, 2010.  Ms. Tyler Thomas suffered pain,
       suffering, mental anguish and fear of impending death.  The heirs
       and next of kin suffered the loss of love, support, society, services,
       comfort, companionship, and financial support.

60.    All of the above was done in violation of Tyler Thomas's rights
       and privileges pursuant to Title IX Education Amendments Act of
       1972 (Title IX, 20 U.S.C. §§ 1681 *et seq*., and its implementing
       regulations, 34 C.F.R. part 106).  Tyler Thomas was a victim of
       discrimination on the basis of her sex in education programs and/or
       activities operated by the Defendant Board, which was a recipient
       of federal financial assistance, as set forth above.

61.    Had Peru State College complied with its duty to report its non
       compliance with Title IX, Tyler Thomas would not have been
       living on campus on December 3, 2010 nor would she have be a
       student at Peru State College.  No reasonable parent, if made aware
       of the above actions and inactions, would have allowed their
       daughter to be living in the same dormitory with Joshua Keadle, a
       ticking time bomb, nor would they have allowed their daughter to
       be a student at Peru State College.

62.    That the Defendant The Board of Trustees of the Nebraska State Colleges
       failed to take any corrective action to remedy the aforementioned
       discriminatory conduct and hostile learning environment. Its actions and
       inactions showed a deliberate indifference and/or conscious disregard for
       the rights of female students and specifically, the deceased.

63.    At all times relevant, the Defendant The Board of Trustees of the
       Nebraska State Colleges had authority over Defendant Joshua Keadle and
       could have taken action to protect the deceased.

64.    That as a result of the actions and inactions of the Defendant The Board of
       Trustees of the Nebraska State Colleges in violation of Title IX as set forth
       herein, the deceased was abducted, sexually assaulted and murdered on
       December 3, 2010.  Ms. Tyler Thomas suffered pain, suffering, mental
       anguish and fear of impending death.

65.    The Defendant remained idle in the face of known harassment by Keadle
       of other female students including the deceased, Tyler Thomas.  Further,
       the Defendant Board took affirmative action in extending a benefit to
       Keadle, that is, he was given additional time to move in to a co-ed
       dormitory to live next door to female students including the deceased,

even though the Defendant Board was aware that Keadle had lied on his Application for Admission, his Employment Application and had not completed the mandatory Housing Application.

This conduct of the Defendant demonstrates deliverate indifference to student-on-student sexual harassment, of which it had actual knowledge, and it intentionally extended benefits to the harasser, Keadle, all in violation of Title IX. Said benefits included allowing him to remain a student despite his false applications, as set out above, allowing him to live in a dormitory without completing a mandatory housing application, allowing him to remain a student despite his academic failures as set out above and allowing him to remain a student despite his escalating dangerous activities towards fellow students.

66.     The deliberate indifference and / or intentional acts of the Defendant set forth above in violation of Title IX caused Tyler Thomas to undergo sexual harassment, sexual violence, kidnapping, rape and murder each of which caused her to be denied on the basis of her sex the benefits of the education program which received federal financial assistance, and caused her on the basis of her sex to be excluded from participation and to be subjected to discrimination under the education program and/or activities of Peru State College which received Federal Financial Assistance.

67.     The Defendant Board's response to each of the above actions of Keadle were clearly unreasonable in light of the known circumstances.

68.     The Defendant Board's responses to the cumulative misconduct of Keadle by November 30, 2010 was clearly unreasonable in light of the known circumstances.

69.     The above actions and inactions of the Board subjected Tyler Thomas to discrimination by the Board's failing to respond in any way to the conduct of Keadle set forth above. Further, the Board's response to Keadle's misconduct was clearly unreasonable when it extended benefits to Keadle as set forth above.

70.     All of the above subjected Tyler Thomas to discrimination in violation of her rights under Title IX.

71.     This student-on-student sexual harassment and violence resulted in the death of Tyler Thomas, which physically deprived her of access to school resources. The Board's knowing refusal to take any action in response to Keadle's behavior set forth above flies in the face of Title IX's core principals and the Board's deliberate indifference violated Tyler Thomas's rights under Title IX.

72.     Keadle's actions were so severe, pervasive and objectively offensive that it obviously undermined and detracted from Tyler Thomas's educational

11

experience in that she was effectively denied equal access to the Board's resources and opportunities.

73.    The heirs and next of kin suffered the loss of love, support, society services, comfort, companionship, and financial support.

WHEREFORE Plaintiff seeks judgment against the Defendant Board of Trustees of the Nebraska State Colleges for the wrongful death of Tyler Thomas, and for those general damages allowed by law, including, but not limited to, the love, society, support, comfort and companionship which the heirs and next of kin of the deceased lost, together with attorney fees and the costs of this action and such other and further relief as the Court deems just.

SECOND CAUSE OF ACTION
(TITLE IX)

74.    Plaintiff incorporates paragraphs 1-73 as it fully sets forth herein.

75.    As set forth above, the deceased's rights under Title IX were violated by the Defendant The Board of Trustees of the Nebraska State Colleges and she has incurred damages for said violations of her rights and she has suffered conscious pain, suffering and fear of impending death prior to her death.

WHEREFORE Plaintiff seeks judgment against the Defendant Board of Trustees of the Nebraska State Colleges for the  general damages allowed by law for the violation of her federally protected rights under Title IX and her conscious pain, suffering and fear of impending death suffered by Tyler Thomas together with attorney fees and costs of this action and such other and further relief as the Court deems just.

THIRD CAUSE OF ACTION
(Against the Defendant Joshua Keadle)

76.    Plaintiff incorporates paragraph 1-75 as it fully sets forth herein.

77.    That Defendant, Joshua Keadle abducted, sexually assaulted and murdered Tyler Thomas on or about December 3, 2010.

78.    That as a result of the actions of Defendant, Joshua Keadle the Plaintiff suffered conscious, pain, suffering and fear of impending death.

79.    The heirs and next of kin suffered the loss of love, support, society services, comfort, companionship and financial support.

WHEREFORE Plaintiff seeks judgment against the Defendant Joshua Keadle for the wrongful death of Tyler Thomas and for those general damages allowed by law, including but not limited to love, society, support, comfort and

companionship which the next of kin of the deceased lost, together with the attorneys fees and costs of this action and such other and further relief as the Court deems just.

FOURTH CAUSE OF ACTION
(Against the Defendant Joshua Keadle)

80.     Plaintiff incorporates paragraph 1-79 as it fully sets forth herein.

81.     Ms. Tyler Thomas incurred damages for conscious pain, suffering and fear of impending death as a result of the actions of Joshua Keadle.

WHEREFORE Plaintiff seeks a judgment against the Defendant Joshua Keadle for her conscious pain, suffering and fear of impending death together with attorneys fees and costs of this action and such other and further relief as the Court deems just.

DATED this 9th day of April, 2014.

Respectfully Submitted, LaTanya Thomas, Special Administrator and LaTanya Thomas the Personal Representative of the Estate of Tyler Thomas, Plaintiff,

Timothy L. Ashford, #19687
P.O. Box 386
Omaha, Nebraska 68102
(402) 342-8888
Attorneys for Plaintiff

and

s/Vincent M. Powers_
Vince Powers, #15866
Vince Powers and Associates
411 So 13th Street, #300
P.O. Box 84936
Lincoln, NE  68501-4936
Ph: 402-474-8000
Fax: 402-474-5006

REQUEST FOR JURY TRIAL

Plaintiff requests jury trial in Lincoln, Lancaster County, Nebraska.

Timothy L. Ashford, #19687

and

s/Vincent M. Powers_
Vince Powers, #15866